## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

DONALD GENE ROBINSON, JR.,   )
    )
        Petitioner,   )
    )
    vs.   )     **Case No. CIV-07-432-D**
    )
WALTER DINWIDDIE, Warden,   )
    )
        Respondent.   )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction of child abuse after former conviction of two or more felonies in Case No. CF-2003-5985, District Court of Oklahoma County. Petitioner bases his challenge on newly discovered evidence in the form of an affidavit from the child victim recanting her trial testimony. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Respondent has filed an Amended Response to the petition [Doc. No. 12][1] and the state court trial transcripts ("Tr."). Petitioner has filed a reply,[2] and thus, the matter is at issue. For the reasons set forth below, it is recommended that the petition be

---

[1]The original Response [Doc. No. 8] omitted relevant pages of the trial transcript in Exhibit 7.

[2]After the Amended Response was filed, Petitioner filed a "Request for Evidentiary Hearing" [Doc. No. 15] which was denied, and Petitioner was again given additional time to file a reply. [Doc. No. 16]. Thereafter, Petitioner filed another Request for Evidentiary Hearing [Doc. No. 17] which was also denied, and Petitioner was advised that such motion would be broadly construed as a reply to the Amended Response. [Doc. No. 19]. The undersigned refers hereafter to Doc. No. 17 as "Petitioner's Reply."

denied.

<u>Background</u>

Petitioner was convicted after a jury trial in 2004 of child abuse after former conviction of a felony[3] for the abuse of his eleven year old daughter, K.R., for which he was sentenced to fifteen years imprisonment.   Case No. CF-2003-5985, District Court of Oklahoma County.   *See* Tr., September 1, 2004, p. 167; Amended Response, Ex 3, p. 1 (Summary Opinion by the Oklahoma Court of Criminal Appeals ("OCCA"), *Robinson v. State*, Case No. F-2004-962).   Petitioner appealed his conviction, alleging (1) the State's use of a videotape improperly bolstered its case; (2) the State's exercise of a peremptory challenge with respect to two jurors denied Petitioner an impartial jury; and (3) instructional errors denied Petitioner due process and a fundamentally fair trial.   Amended Response, Ex. 1.   In an unpublished summary opinion, the OCCA affirmed Petitioner's conviction and sentence.   Amended Response, Ex. 3.

In a subsequently filed application for post-conviction relief, Petitioner sought a new trial on the basis of newly discovered evidence - an affidavit dated March 17, 2006, in which the victim, K.R., allegedly recanted her trial testimony.   In its order denying post-conviction relief, the state district court found that the facts set forth in the affidavit were discoverable with due diligence prior to both the trial and the direct appeal, and as such, the claim was

---

[3]The petition and certain other state court documents state that Petitioner was found guilty of the charged offense after former conviction of two or more felonies.  This discrepancy is not material to any issue raised in the instant action.

procedurally barred.  Amended Response, Ex. 4, p. 3.  Nonetheless, the district court also addressed the merits of Petitioner's claim, and, applying the factors under state law to be considered in determining whether to grant a new trial based on newly discovered evidence,[4] the court found that although the affidavit was material to Petitioner's case, the remaining criteria for a new trial had not been met.  *Id.*, pp. 4-8 (discussing the factors set forth in *Ellis v. State*, 867 P.2d 1289, 1303 (Okla. Crim. App. 1992)).  Therefore, Petitioner's request for relief was denied.  Petitioner appealed, and the OCCA affirmed the denial of post-conviction relief.  Amended Response, Ex. 6.  The OCCA also addressed the merits of Petitioner's actual innocence claim and specifically found "no indication from the record presented to this Court that Petitioner is entitled to a new trial based upon the affidavit signed by Petitioner's daughter, the victim."  *Id.*, p. 4.

In the instant action, Petitioner raises a single ground for habeas relief.   He alleges that "[n]ewly discovered evidence requires reversal under the Fourteenth Amendment of the Federal Constitution."  Petition, p. 6.  Petitioner bases his claim on the March 17, 2006, affidavit by K.R. and alleges that such evidence "is more than impeaching or cumulative" and "would probably produce an acquittal at a new trial."  *Id.*, p. 6a.

Respondent contends that Petitioner's claim amounts to a freestanding claim of actual

---

[4]The state court found that the factors to be considered were: 1) whether the new evidence is material to the case; 2) whether the new evidence could not have been discovered with reasonable diligence before the trial; 3) whether the new evidence is merely cumulative or impeachment evidence; and 4) whether the new evidence creates a reasonable probability that, had it been introduced at trial, it would have changed the outcome.  Amended Response, Ex. 4, p. 4.  The state court also noted that under state law the granting of a motion for new trial is discretionary.  *Id.,* p. 4 (citing Okla. Stat. tit. 22, § 952).

innocence and that absent allegations of accompanying constitutional violations, such claim is not entitled to habeas review.  Respondent also addresses the merits of Petitioner's actual innocence claim and asserts that, in any event, Petitioner fails to make a sufficient showing of actual innocence to warrant habeas relief.

## DISCUSSION

### Standard Governing Habeas Corpus Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may grant a writ of habeas corpus relief on a claim that has been adjudicated in state court only if that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding.  28 U.S.C. § 2254(d)(1) and (2).  Under this standard, judicial review is directed to the result of the state appellate court's decision, not its reasoning.  *See Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004) ("[W]e defer to the [state court's] decision unless we conclude that its result - not its rationale - is 'legally or factually unreasonable'").

A state court decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362,

405-406 (2000).  It is not enough that the state court decided an issue contrary to a lower federal court's idea of how the rule should be applied; the state court decision must be "diametrically different," "opposite in character or nature," or "mutually opposed" to the Supreme Court decision itself.  *Id.* at 406.

A state court decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  "AEDPA's conception of objective unreasonableness lies 'somewhere between clearly erroneous and unreasonable to all reasonable jurists.'"  *House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008) (quoting *Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006)).  "Thus, 'only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254.'"  *Id.* (quoting *Maynard*, 468 F.3d at 671)).  In conducting the AEDPA deferential inquiry, the Court presumes that the state court factual findings are correct, and the burden of rebutting this presumption by clear and convincing evidence is placed on the petitioner.  *See* 28 U.S.C. § 2254(e)(1); *Smith v. Mullin*, 379 F.3d 919, 924-25 (10th Cir. 2004).

I.  Actual Innocence Is Not an Independent Basis for Federal Habeas Relief

Petitioner alleges that K.R.'s recanted testimony "could not have been discovered before trial or original appeal because the victim had not chosen to recant her story at that time."  Petition, p. 6a.  Petitioner further asserts that K.R.'s recantation "requires reversal." *Id.*, p. 6.  Respondent argues that Petitioner's freestanding claim of actual innocence does not

raise a cognizable habeas claim.  Response, pp. 2-5 (relying on *Herrera v. Collins*, 506 U.S. 390, 400 (1993), *LaFevers v. Gibson*, 238 F.3d 1263, 1265 (10th Cir. 2001), and *Sellers v. Ward*, 135 F.3d 1333, 1338-39 (10th Cir. 1998)).   The undersigned agrees.

In *Herrera v. Collins*, 506 U.S. 390 (1993), the Supreme Court considered whether habeas relief was available for claims of "bare innocence," and if so, under what circumstances such claims required relief.[5]  The Supreme Court stated:

> [c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal relief absent an independent constitutional violation occurring in the underlying state criminal proceeding . . . . This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution--not to correct errors of fact.

*Herrera*, 506 U.S. at 400.  The Court in *Herrera* held that although a strong claim of actual innocence may excuse a habeas petitioner's procedural default in a capital case so that a court may address an underlying constitutional claim that would otherwise be barred for procedural reasons, a claim of innocence does not itself provide a basis for habeas relief.  *Id.* at 404.  In deciding *Herrera*, the Supreme Court "assume[d], for the sake of argument . . ., that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would

---

[5]Herrera had been convicted of murder and sentenced to death; thereafter, Herrera claimed that several new affidavits demonstrated that his brother had committed the crime.  *Herrera*, 506 U.S. at 393.  Herrera's state habeas action raising a claim of "actual innocence" based on newly discovered evidence was denied.  *Id.* at 396.  In his federal habeas petition, Herrera argued that the execution of an innocent man would violate the Eighth and Fourteenth Amendments.  *Id.* at 396-97.  The Supreme Court affirmed the denial of habeas relief, finding that although Herrera attempted to allege that the new evidence had been withheld in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), there was no evidentiary basis for his *Brady* claim, and that absent an accompanying constitutional violation, Herrera's claim of actual innocence was not cognizable.  *Id.*

6

render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Id.* at 417.  The Court described "the threshold showing for such an assumed right" as "extraordinarily high."  *Id.*[6]

Here, Petitioner does not assert actual innocence as a gateway to permit consideration of defaulted constitutional claims.[7]  Rather, he asserts his innocence as demonstrated by the newly discovered recantation evidence as the sole basis for habeas relief.  Petitioner's case is not, however, a capital case, and therefore it does not come within the limited exception discussed in *Herrera*.  The undersigned finds therefore that Petitioner's freestanding claim of claim of actual innocence does not raise a constitutional issue and fails to provide a basis for federal habeas relief.  *See LaFevers v. Gibson*, 238 F.3d 1263, 1265 n.4 (10th Cir. 2001) ("[A]n assertion of actual innocence, although operating as a potential pathway for reaching otherwise defaulted constitutional claims, does not, standing alone, support the granting of

---

[6]Although the Court has made the same assumption in subsequent cases, it has not resolved the issue of whether an actual innocence claim is an independent basis for federal habeas relief in a capital case.  *See House v. Bell,* 547 U.S. 518, 554-55 (2006) (declining to resolve "the question left open in *Herrera*" and concluding that "whatever burden a hypothetical freestanding innocence claim would require, this petitioner has not satisfied it"); *Schlup v. Delo*, 513 U.S. 298, 315 (1995) (holding the petitioner's actual innocence claim is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits") (citing *Herrera*, 506 U.S. at 404).

[7]Petitioner does not allege that the State withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), or that the State deliberately deceived the court or the jury by presenting false testimony.  *Mooney v. Holohan*, 294 U.S. 103, 112 (1935); *Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *see also Wild v. Oklahoma*, 187 F.2d 409, 410 (10th Cir. 1951) ("[A] writ of habeas corpus should not be granted upon the grounds that false and perjured testimony was used unless it is shown that it was knowingly used against the defendant by the prosecuting officers in the criminal case.").

the writ of habeas corpus.") (citing *Herrera*, 506 U.S. at 400); *Sellers v. Ward*, 135 F.3d

1333, 1338-39 (10th Cir. 1998) (discussing actual innocence claims as a gateway to other

constitutional claims, but not raising an independent constitutional claim cognizable on

habeas review); *Pettit v. Addison*, No. 04-7044, 2005 WL 2671946, *3 (10th Cir. Oct. 20,

2005) (unpublished decision)[8] (holding petitioner's freestanding actual innocence claim

based on recanted trial testimony failed to state a claim for habeas relief); *see also Allen v.

Beck*, No. 05-5168, 2006 WL 1469280, *2 (10th Cir. May 16, 2006) (unpublished decision)

(rejecting petitioner's argument that untimely petition should be equitably tolled based on

actual innocence claim consisting of three letters from victims of sexual abuse recanting their

trial testimony).[9]

## II.  Petitioner's "Evidence" Does Not Show Actual Innocence

Even if a freestanding actual innocence claim in a non-capital case were cognizable

in a federal habeas action, a review of the record demonstrates that Petitioner has failed to

make the required "extraordinarily high" showing.  *Herrera*, 506 U.S. at 417.

K.R., a seventh-grader at the time of trial, was initially hesitant to testify regarding

abuse by Petitioner during her sixth grade year.  Tr., August 31, 2004, pp. 101-05.

Ultimately, however, she testified that the injuries on her neck which were pictured in a

---

[8]This unpublished decision and any others cited herein are cited as persuasive authority pursuant to Tenth Circuit Rule 32.1.

[9]In *Allen* the Tenth Circuit stated that "because [the petitioner] did not receive a death sentence," th[e] [*Herrera*] exception does not apply" and further noted that "[a]s much as these recantations give us pause, if *Herrera* is to be revisited, it is not for us to do so."  *Allen*, 2005 WL 2671946, *2.

photograph shown to her by the prosecutor were caused when her father choked her with his hands while he lifted her off the floor. *Id.*, pp. 105-08. She further testified that the injuries on her legs, also shown in a photograph, occurred when her father whipped her with an extension cord until she grabbed the cord to try keep him from hitting her and it "snapped." *Id.*, pp. 109-10. She testified that she eventually ran out of the room and out the front door to a friend's house, and then she called her uncle, Darron Robinson, and went to his house. *Id.*, pp. 112-13.

In the affidavit executed approximately eighteen months after trial, K.R. states that the injuries inflicted upon her were not caused by her father but were the result of a beating suffered at the hands of several gang members as part of an initiation rite. Petitioner's Reply, Exhibit C; *see also* Amended Response, Ex. 8.[10] Petitioner contends that the introduction of this "affidavit evidence" at trial "would have changed the outcome because K.R.'s testimony was central to the State's case . . . ." Petitioner's Reply, p. 6.

K.R.'s affidavit fails to provide truly persuasive "newly discovered evidence" for several reasons. First, K.R.'s affidavit does not constitute reliable evidence. "In the new

---

[10]The full content of K.R.'s affidavit is set forth below:

At Donald Gene Robinson's trial, I made statements which were completely false. My dad never whipped, beat or slapped me. I was beaten by other gang members. They told me it was part of becoming a gang member and if I told anyone, I would be beaten up even worse, or maybe even killed. My dad would have hurt my friends, if he knew. I could not tell anyone. I no longer wish to become a gang member and now I know how wrong it was for me to tell a lie about my dad. I can't stand it. I have to tell the truth. The pictures in court, my dad did not do it. This is the truth.

Amended Response, Ex. 8; Petitioner's Reply, Ex. C.

trial context, motions based solely upon affidavits are disfavored because the affiants' statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations." *Herrera*, 506 U.S. at 417; *see also Funkhouser v. Saffle*, No. 91-5105, 1991 WL 252669, *4 (10th Cir. Nov. 25, 1991) (unpublished decision) ("Recantation of testimony given under oath at trial is not looked upon with favor. Indeed, such is generally looked upon with suspicion.") (quoting *United States v. Ahern*, 612 F.2d 507, 509 (10th Cir.1980)). In this case, such caution is clearly warranted, as there is no evidence whatsoever to support K.R.'s post-trial statement that her injuries resulted from her involvement with a gang, nor does K.R. explain the reason for her year and a half delay before coming forward with a new and otherwise unsupported explanation for the physical injuries she undeniably sustained. *See Herrera*, 506 U.S. at 417-18 (finding affidavits fell short of threshold for actual innocence showing based in part on affiants' failure to provide satisfactory explanation as to why they "waited until the 11th hour" to offer their statements).

Moreover, K.R.'s statements in her post-trial affidavit are in direct conflict with other evidence in the trial record. Actual innocence evidence "must be considered in light of the proof of Petitioner's guilt at trial." *Herrera*, 506 U.S. at 418. Here, there was substantial evidence of Petitioner's guilt presented at trial. In its order affirming the denial of post-conviction relief, the OCCA set forth the following factual findings made by the district court concerning the evidence presented at trial:

> [T]he District Court noted that testimony from other witnesses presented at
> trial corroborated K.R.'s testimony. Her sisters, D.R. and A.R., testified that
> they both saw Petitioner entered K.R.'s room with an extension cord in his

hand and both heard K.R. pleading with her father to stop beating her with the cord.  D.R. also testified that she later saw the broken extension cord in K.R.'s room and that Petitioner had previously used an extension cord on all four of his children.   Trial counsel's opening statement characterized Petitioner's behavior (which included the admission that the extension cord was used) as a discipline matter that "got out of hand." [The district court] also noted that K.R.'s testimony at preliminary hearing and trial differed, being much more expositive at preliminary hearing.  Testimony from an expert witness at trial established that this is not an unusual occurrence, as victims of such abuse are often subjected to family pressure and feelings of guilt at the time of trial, and will tend to recant previously given testimony.

Amended Response, Ex. 6, pp. 2-3.  Petitioner has failed to rebut the factual findings of the state courts as to the other substantial evidence corroborating K.R.'s trial testimony that he physically abused her.  *See* 28 U.S.C. § 2254(e).  In addition to the unrebutted evidence cited by the state courts, the record includes testimony by Darron Robinson, who is K.R.'s uncle and Petitioner's brother-in-law.  Mr. Robinson testified that when K.R. came to his home on the night of the incident, he observed that she was limping and had a large mark on her leg and some lines on her neck.   Tr., August 31, 2004, pp. 118-120.  Mr. Robinson further testified that K.R. stated that her father had "whipp[ed] [her] for getting in trouble at school." *Id.*, p. 120.  Mr. Robinson testified that he talked with Petitioner the same evening, and in response to his inquiry about what happened, Petitioner stated that K.R. had gotten into trouble at school, so he had whipped her and that she had gotten what she deserved.  *Id.*, pp. 120-123.  Thus, the trial record includes testimony by other witnesses which was consistent with K.R.'s trial testimony and which supports the jury's finding of Petitioner's guilt.

After a review of the record, the undersigned finds without reservation that K.R.'s affidavit "fail[s] to provide a convincing account" of the physical abuse she suffered.

*Herrera,* 506 U.S. at 418.  Although K.R.'s post-trial affidavit could be used to impeach her trial testimony, other credible evidence was presented that Petitioner had physically abused his daughter.  Therefore, the undersigned finds that K.R.'s sworn statement falls far short of "truly persuasive demonstration of actual innocence."   *Herrera*, 506 U.S. at 417. Accordingly, Petitioner has failed to demonstrate that he is entitled to habeas relief.

III.  Petitioner's Request for Evidentiary Hearing

Throughout Petitioner's filings, he requests this Court conduct an evidentiary hearing to evaluate the credibility and impact of K.R.'s recantation.  Petitioner's Reply, pp. 1-2, 7. Respondent asserts that Petitioner is not entitled to an evidentiary hearing in this matter because he was not diligent in attempting to develop his claim of actual innocence, and/or fails to qualify for an evidentiary hearing under AEDPA standards.  Amended Response, p. 1.

The AEDPA restricts the availability of evidentiary hearings when a habeas petitioner fails to develop the factual basis of his claim in state court.  *See* 28 U.S.C. § 2254(e)(2)(A)-(B).[11]  But when a petitioner diligently attempts to develop the facts of a claim in state court, the federal court applies the standard in effect prior to the adoption of the AEDPA.  *See Bland v. Sirmons*, 459 F.3d 999, 1033 (10th Cir. 2006).  Here, the record

---

[11]Under the AEDPA, "If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that" his claim relies on: (1) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable;" or (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)(i)-(ii).

reflects that Petitioner did attempt to develop the factual foundation of his actual innocence claim by requesting an evidentiary hearing in the state courts. Amended Response, Ex. 5, p. 4 (Petitioner's Brief in Support on appeal to the OCCA, Case No. PC-2006-1229). Assuming that Petitioner has diligently pursued the factual development of his claim in state courts but was not allowed to do so, the pre-AEDPA standard governs, and to be entitled to an evidentiary hearing, Petitioner must show that his allegations, if true and if not contravened by the existing record, would entitle him to habeas relief. *Hammon v. Ward*, 466 F.3d 919, 927 (10th Cir. 2006); *Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir. 1998). Petitioner has not made such a showing. Accordingly, Petitioner's request for an evidentiary hearing should be denied.

## RECOMMENDATION

Based upon the foregoing analysis, it is recommended that the petition for a writ of habeas corpus be denied. Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by the 19th day of March, 2009, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 27th day of February, 2009.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE